UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ROSA MEJIA,                             :
                        Petitioner,     :    06 Civ. 5322 (DLC)
                                        :        04 CR. 569
          -v-                           :
                                        :    OPINION & ORDER
UNITED STATES OF AMERICA,               :
                        Respondent.     :
                                        :
----------------------------------------X

Appearances

For Petitioner:
Joel K. Dranove
299 Broadway, Suite 706
New York, NY 10007

For Respondent:
Michael J. Garcia
United States Attorney
Sarah Y. Lai
Assistant United States Attorney
United States Attorney's Office for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

On July 14, 2006, counsel for Rosa Mejia ("Mejia") timely
filed this petition for a writ of habeas corpus pursuant to
Title 28, United States Code, Section 2255, challenging her
sentence on the ground of ineffective assistance of counsel.

The petition was fully submitted on July 16, 2007.[1]  For the following reasons, the petition is denied.

## Background

Mejia was arrested on August 2, 2004, and charged with one count of narcotics conspiracy.  On that day, CJA attorney Donald duBoulay ("duBoulay") was appointed to represent her.  On October 6, the trial date of February 7, 2005, was reconfirmed.[2] A superseding indictment was filed on October 7, charging Mejia and five co-defendants with conspiring to distribute 30 kilograms and more of heroin and 5 kilograms and more of cocaine.  The charge carried a mandatory minimum term of imprisonment of ten years, and alleged that Mejia had used a person less than 18 years old to commit the crime.

On February 2, 2005, Mejia pleaded guilty to a superseding information charging one count of conspiring to launder drug proceeds in violation of 18 U.S.C. § 1956(h).  Mejia assisted her co-defendant Jose Ramon Pena-Rosario, who is also the father of her youngest children, by storing and transferring the proceeds of his narcotics business.  On occasion, Mejia had her oldest daughter carry drug proceeds to co-conspirators.

[1] The intervening delay is attributable, inter alia, to the fact that petitioner did not serve the Government with the petition and the case was initially assigned to the wrong judge.

[2] The trial date had been chosen on June 21, 2004, when defendants were arraigned on the original indictment.

2

Mejia pleaded guilty pursuant to a plea agreement in which the parties stipulated to a guidelines range of 46 to 57 months' imprisonment.  Mejia reserved the right in the agreement to move for a downward departure based on extraordinary family circumstances and to make an application for a non-guidelines sentence pursuant to 18 U.S.C. § 3553(a).  Mejia had twins who were four years old and her oldest child was seventeen.  The defendant also agreed not to "litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below" the stipulated guidelines range.  During the plea allocution, Mejia acknowledged that by executing the agreement she had given up her "right to appeal or litigate or ever challenge [her] sentence so long as" it did not exceed 57 months in prison.

When she met with the Probation Office during its preparation of the Presentence Report, Mejia told the probation officer that her children would reside with the twins' paternal grandparents.  DuBoulay discussed Mejia's answer with her shortly after the interview and again as they reviewed the draft Presentence Report.  The final Report recited that the "defendant stated that when she is sentenced, her children will reside with and be cared for by their paternal grandparents." On neither occasion did Mejia tell duBoulay that her statement to the officer was in error or ask him to investigate whether

3

the grandparents were able or willing to take the children. When duBoulay solicited names from Mejia of persons who could write letters to the Court on her behalf for sentencing, she did not suggest that he contact the grandparents.

DuBoulay's written sentencing submission made a motion for a downward departure based on extraordinary family circumstances and for a non-guidelines sentence. He explained that the grandparents were the only family members who could take care of the children, but that they were 61 and 70 years old, one of them was ailing, and they would have to apply for visas to come from the Dominican Republic to care for the children in this country. The submission included letters from Mejia's oldest child, persons who knew the family, and Mejia's co-workers.

At the July 15, 2005 sentencing proceeding, duBoulay moved for a downward departure based on extraordinary family circumstances. He did not make an argument for a non-guidelines sentence pursuant to Section 3553(a), because that would have permitted the Government to put additional information about the defendant that related to the Section 3553(a) factors on the record.[3] In the course of making his motion for a downward departure, duBoulay again emphasized that the grandparents were old and sickly. He reported that the grandmother was in the

---

[3] The sentencing proceeding was interrupted so that the defendant and defense counsel could discuss this decision at some length.

hospital recently for back problems and the grandfather has a
swollen leg and back pains and takes a lot of medication.  He
added that there was a new fact as well.  The grandfather had
already returned to the Domincan Republic and the grandmother
was leaving soon to join him because their three-month visas had
expired.  They would have to wait for another 90 days before
they could return, and would be able to get at best a six-month
visa.  DuBoulay predicted that the burden of raising the twins
in this country would fall on the 17 year old daughter.  The
Court asked several questions about the grandparents' situation,
which duBoulay answered with information given to him by Mejia.
When Mejia spoke she did not offer more details about the
grandparents' health condition.  She did ask for a chance to
stay with her children; at that time she was still out on bail.

     The Court declined to depart and imposed a sentence of 46
months' imprisonment.  Mejia's surrender was delayed until
February 17, 2006 so that she could get elective surgery for a
painful condition.[4]  Mejia did not appeal her conviction.

## Discussion

     Mejia petitions for a writ of habeas corpus on the ground
that she received ineffective assistance of counsel at
sentencing.  It appears that she seeks to be re-sentenced under

---

[4] Surrender was adjourned again on February 15 to April 7, 2006.

the terms of the plea agreement, but with the opportunity to present new information to show that the grandparents are not able to care for the twins. She claims in her petition that she is entitled to the re-sentencing because she told her attorney when they reviewed the draft Presentence Report that the grandparents "were physically unable to care for her three children, as a result of pre-existing medical conditions."

In its opposition to the petition, the Government included a submission from duBoulay. As explained above, duBoulay had attended Mejia's interview with the Probation Department and remembers Mejia telling the probation officer that their paternal grandparents would take care of her twins if she were incarcerated. DuBoulay represents that he discussed Mejia's statement with her twice: right after the interview and again as they reviewed the draft Presentence Report. He adds that Mejia did not object to the accuracy of her prior statement or the Presentence Report. He also represents that Mejia never asked him to investigate the grandparents' health or gave him information which would have led him to believe that such an investigation would have been fruitful.

In reply, Mejia changes tack. She no longer asserts that she told her attorney that the Presentence Report contained an error. She does not deny duBoulay's description of their conversations. Indeed, she concedes that duBoulay's sentencing

memorandum was "generally meaningful."  Instead, she argues
principally that the "frail and failing health of the
grandparents was not known to the sentencing court" because "the
petitioner lacked an opportunity to reply and correct the
material misapprehension of facts, because the necessary
investigation into [their] health . . . had not been
undertaken."  She submits a letter from the grandparents stating
that they were never asked whether they could take care of the
children and that if they had been asked they would have said
that they could not.  Based on these claims, Mejia argues that
due process requires a re-sentencing.

        As an initial matter, Mejia's petition is barred by her
knowing and voluntary waiver of her rights to appeal and to file
a habeas petition, as set out in her plea agreement.  Plea
agreement waivers of rights are enforceable when made knowingly
and voluntarily.  As the Court of Appeals noted in the context
of appeal waivers,

        In no circumstance may a defendant, who has secured
        the benefits of a plea agreement and knowingly and
        voluntarily waived the right to appeal then appeal
        the  merits  of  a  sentence  conforming  to  the
        agreement, for to permit such a defendant to escape
        the  fairly  bargained-for  consequences  of  her
        agreement with the government would render the plea
        bargaining  process  and  the  resulting  agreement
        meaningless.

United States v. Monzon, 359 F.3d 110, 117 (2d Cir. 2004)

(citation omitted).  In deciding that a waiver of the right to

                                7

appeal or file a Section 2255 petition was knowing and voluntary, courts have considered factors such as: (1) whether the petitioner signed the plea agreement; (2) whether the petitioner stated during the plea colloquy that she had read and understood the plea agreement; (3) whether the petitioner failed to take a direct appeal from the sentence; and (4) whether the petitioner failed to assert in her Section 2255 petition that she had not understood the waiver. See Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam).

Mejia, who was sentenced to 46 months' imprisonment, waived her right to challenge under Title 28, Unites States Code, Section 2255 any sentence within or below the Stipulated Guidelines range of 46 to 57 months. Mejia signed the plea agreement. During the plea colloquy, Mejia was asked by the Court: "Do you understand that by executing this agreement, you have given up your right to appeal or litigate or ever challenge your sentence so long as I do not sentence you to more than 57 months in prison? Do you understand that?" Mejia responded, "Yes." Mejia did not take a direct appeal from her sentence. Moreover, Mejia does not assert in the petition that she did not understand the content or meaning of the waiver, nor does she offer any other allegations relevant to the validity of the

8

waiver.⁵  Therefore, Mejia's waiver of her right to appeal her

sentence directly or indirectly is enforceable, and her Section

2255 petition is barred.

In any event, to the extent that Mejia's reply memorandum

does not fully abandon her ineffective assistance of counsel

claim, that claim fails on the merits.  "[I]n order to prevail

on an ineffective assistance of counsel claim, a defendant must

show (1) that [her] attorney's performance fell below an

objective standard of reasonableness, and (2) that as a result

[she] suffered prejudice."  United States v. Jones, 482 F.3d 60,

76 (2d Cir. 2006), cert. denied, 127 S. Ct. 1306 (Feb. 20, 2007)

(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  As

her reply memorandum concedes, at least in part, it cannot be

said that duBoulay's assistance in connection with Mejia's

sentencing "fell below an objective standard of reasonableness."

The record indicates that duBoulay was present during Mejia's

interview with the probation officer that lead to the

preparation of the Presentence Report, that he specifically

---

⁵ Although "[t]here is no general bar to a waiver of collateral
attack rights in a plea agreement," such a waiver "does not
foreclose an attack on the validity of the process by which the
waiver has been procured," Frederick v. Warden, Lewisburg
Correctional Facility, 308 F.3d 192, 195 (2d Cir. 2002).  The
claims contained in Mejia's petition, however, do not constitute
such an attack.  In addition, as discussed below, Mejia's
ineffective assistance claim has no merit.

discussed Mejia's statement regarding her family circumstances
with her shortly after the interview, and that he did so again
as they reviewed the draft Presentence Report prior to the
sentencing proceeding.  Based on the representations made by
Mejia both to the probation officer and to duBoulay regarding
the grandparents' willingness to assist in caring for the
younger children (at least to the extent possible given their
health and immigration status), duBoulay prepared a detailed
sentencing memorandum, which devoted considerable attention to
Mejia's family circumstances.  DuBoulay likewise detailed the
medical and immigration issues facing the grandparents and urged
the Court to grant a departure on those grounds during the
sentencing hearing.  These efforts were not objectively
unreasonable.

       In addition, Mejia's petition and reply memorandum do not
demonstrate that it was unreasonable for duBoulay to rely on
Mejia's representations regarding the grandparents'
circumstances rather than conducting a further investigation to
discover "the true situation."  Mejia was out on bail during
this entire period and able to evaluate personally the ability
and willingness of the grandparents to care for her children.
To the extent that the Presentence Report, sentencing
memorandum, or sentencing hearing did not reflect what Mejia
believed to be "the true situation," she was free to inform her

counsel (and the Court) of that fact. She did not.[6] In light of
this record, and the concessions made in Mejia's reply regarding
the quality of duBoulay's representation, Mejia's Sixth
Amendment claim must fail.

Mejia's reconfigured due process claim likewise fails.
This claim -- raised for the first time in the reply memorandum
received by the Court on July 16, 2007 -- is barred by her plea
agreement and time-barred under 28 U.S.C. § 2255, ¶ 6. In any
event, Mejia's due process claim also fails on the merits.

The essence of Mejia's claim is that the Court denied Mejia
due process by imposing a sentence based on a "material
misapprehension of facts" regarding the grandparents'
willingness and ability to care for her younger children, and
that she "lacked an opportunity to . . . correct" this error.
As the discussion above demonstrates, however, Mejia was
provided several opportunities to present whatever evidence she
wished on this issue, to the Probation Department, in her
individual colloquy with the Court on July 15, 2005, and through

---

[6] Following her plea colloquy, the Court specifically informed
Mejia of the import of the Presentence Report and her role in
ensuring its accuracy: "[A]t some point here the Probation
Department is going to want to interview you, Ms. Mejia. Make
sure when you speak to them anything you say to them is truthful
and accurate. They prepare a report. It's very important to me
in deciding what sentence to impose. You read that report
carefully, make sure there are no errors in it. If there are
errors, point them out to your lawyer so he can bring them to my
attention. Do you understand?" Mejia replied, "Yes."

counsel prior to and during that proceeding.  Moreover, her
counsel availed himself of that opportunity both in the
sentencing memorandum and at the sentencing hearing.  Finally,
to the extent that any "misapprehension" regarding the
grandparents existed, it was solely the result of Mejia's own
representations regarding their status.  In sum, although the
Court, based on careful consideration of the arguments and
evidence presented, did not conclude that Mejia's family
circumstances were "extraordinary" such that a downward
departure would be justified -- a decision that was not appealed
-- the process employed to reach that conclusion was not
constitutionally defective.

When examined in terms of due process, the relevant
question presented by Mejia's petition is not whether more
convincing evidence in support of Mejia's motion for a downward
departure may have been available then or is available now, or
whether, in retrospect, the Court should have granted the
departure, but rather whether the sentencing process provided a
reasonable opportunity for Mejia to present all material
evidence in support of her motion.  In cases such as United
States v. McDavid, 41 F.3d 841, 844 (2d Cir. 1994), United
States. v. Stein, 544 F.2d 96, 103 (2d Cir. 1976), and United
States v. Malcolm, 432 F.2d 809, 818 (2d Cir. 1970), a due
process violation occurred when the sentencing court essentially

12

refused, without justification, to allow defendant's counsel to rectify fundamental factual errors regarding issues such as the defendant's probation status, prior criminal record, and cooperation with the Government. In these cases, it was the failure to provide the defendant with an adequate opportunity to be heard, rather than any flaw with the sentence imposed or the completeness of the information upon which that sentence was based, that raised due process concerns. It is "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct . . . that renders the proceedings lacking in due process." Townsend v. Burke, 334 U.S. 736, 741 (1948). Mejia's petition does not allege that she was denied such an opportunity to be heard, and her request to be re-sentenced on due process grounds therefore fails.

## Conclusion

Mejia's petition is denied. No certificate of appealability shall issue. Mejia has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). Moreover, any appeal from this order would not be taken in good faith. See 28 U.S.C. § 1915(a)(3); Coppedge v.

13

United States, 369 U.S. 438, 445 (1962).  The Clerk of Court
shall dismiss the petition.

SO ORDERED:

Dated:    New York, New York
          August 22, 2007

_____
DENISE COTE
United States District Judge

COPIES SENT TO:

Joel K. Dranove                           Sarah Y. Lai
Law Office of Joel K. Dranove            Assistant United States Attorney
299 Broadway, Suite 706                   One Saint Andrew's Plaza
New York, NY 10007                        New York, NY 10007